Opinion issued June 9, 2005





     











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00475-CR




CLEMETRIC ROSHELL THOMAS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law No. 9
Harris County, Texas
Trial Court Cause No. 1210295




MEMORANDUM OPINION 

          Appellant, Clemetric Roshell Thomas, appeals from her conviction for driving
while intoxicated (“DWI”). After a jury found her guilty, the trial court sentenced
appellant to 180 days in jail, suspended the sentence, placed her on community
supervision for 18 months, and assessed a $750 fine against her. In three issues,
appellant contends that (1) the trial court abused its discretion in denying her motion
for a continuance, (2) the trial court erred in denying her motion for mistrial after the
prosecutor “repeatedly struck at the appellant over the shoulders of her defense
counsel in closing argument,” and (3) the evidence is legally and factually insufficient
to support appellant’s conviction. We affirm.
Background
          At 12:45 a.m., on December 20, 2003, Houston Police Officer R. A. Salazar
saw appellant drive the wrong way down a one-way street in downtown Houston. 
Before he could pull her over, Officer Salazar observed appellant drive three to four
blocks, weaving in and out of the oncoming traffic. After she stopped, Officer
Salazar noticed that appellant had an odor of alcohol on her breath, bloodshot eyes,
and slurred speech. Appellant stated that she had no idea why Officer Salazar had
stopped her. Appellant told the officer that she was on her way home from a party. 
When he asked if she had been drinking, appellant told Officer Salazar that she had
drunk three or four vodkas with cranberry juice. The officer asked appellant to get
out of her car. As he walked behind her, Officer Salazar noticed that appellant did
not have a stable walk. Although he was not certified to perform field sobriety tests,
Officer Salazar asked appellant to perform the “Rhomberg test” by placing her arms
at her side, closing her eyes, and tilting her head back. Officer Salazar instructed her
to remain in this position for 10 seconds. Appellant complied, and Officer Salazar
observed appellant swaying from to side to side.
          Believing that appellant was intoxicated and unable to get a DWI unit to come
to the scene, Officer Salazar arrested appellant and transported her to the police
station. At the station, appellant agreed to take a breath test but did not blow hard
enough into the intoxilyzer to provide an adequate sample to measure. Officer A. M. 
Carmen, who administered the test, noticed that appellant had slurred speech, an odor
of alcohol, and that her eyes were red and glassy. Appellant also performed field
sobriety tests at the station, which were videotaped. However, the videotape was lost
and never found before trial. 
          An “administrative license revocation” (ALR) hearing was conducted on
March 9, 2004, at which Officer Salazar testified. Appellant’s DWI trial was set for
March 16, 2004. On March 11, 2004, defense counsel filed a motion for continuance,
asserting that he had ordered a copy of the ALR transcript but that it was not yet
ready. The trial court granted the continuance and trial was reset for March 25, 2004. 
The evening before trial, defense counsel filed a second motion for continuance,
asserting that he had not yet received the transcript from the ALR hearing. Before
trial began, defense counsel presented the second motion for continuance. Defense
counsel argued that he needed the transcript because Officer Salazar had testified at
the ALR hearing. The trial court denied the motion. It was also revealed at that time
that the defense had an audiotape of the ALR hearing. Appellant’s trial immediately
followed. 
          Because the videotape of appellant’s performance of the field sobriety tests was
lost before trial, the officer who administered the tests testified outside the presence
of the jury that, without the tape, he had no independent recollection of how appellant
performed. It was agreed that no mention would be made to the jury of the field
sobriety tests. 
          The jury found appellant guilty of DWI. The defense filed a motion for new
trial, based on the trial court’s denial of her second motion for continuance. In
support of the motion, the defense argued that appellant’s constitutional rights of due
process, effective assistance of counsel, and confrontation were violated. Appellant
asserted that, because she did not have access to Officer Salazar’s testimony at the
ALR hearing, defense counsel could not adequately cross-examine the officer at trial. 
In response, the State pointed out that the defense had an audiotape of the ALR
hearing, which served the same function as a transcript. The trial court denied the
motion for new trial, stating that it had granted the first continuance as a “courtesy”
and “a last opportunity” to allow defense counsel to obtain the transcript. The court
also recalled that defense counsel had done an “effective job of cross-examining”
Officer Salazar at trial.
Denial of Continuance 
          In her first issue, appellant contends that the trial court abused its discretion
and violated appellant’s constitutional right to confrontation in denying her second
motion for continuance. 
          Granting or denying a motion for continuance is within the sound discretion
of the trial court. Janecka v. State, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). To
establish that the trial court abused its discretion, appellant must show that the denial
of her motion resulted in actual prejudice to her. Id.; see also Wright v. State, 28
S.W.3d 526, 532 (Tex. Crim. App. 2000).
          Pursuant to a defendant’s right to equal protection, the State must provide an
indigent criminal defendant a transcription of testimony from a previous proceeding,
if that transcript is needed for an effective defense or appeal. Britt v. North Carolina,
404 U.S. 226, 227, 92 S. Ct. 431, 433 (1971). In determining a defendant’s need, the
Supreme Court identified two relevant factors: the value of the transcript in
connection with the defense, and the availability of alternative devices that would
fulfill the same functions as a transcript. Id. at 227, 92 S. Ct. at 433–34. The Britt
court articulated that it is assumed that the transcript from a prior proceeding is
valuable to a defendant without a particularized showing of need. Id. at 228, 92 S.
Ct. at 434. However, if the record reflects that an adequate alternative to the
transcript is available to the defendant, then the trial court does not err in refusing to
order the State to provide a free transcript to the defendant. See id. at 230–31, 92 S.
Ct. at 434–35. 
          In Britt, the defendant conceded that his counsel could have requested the court
reporter to read back his notes of the prior proceeding “well in advance of the second
trial.” Id. at 239, 92 S. Ct. at 435. The Supreme Court concluded that the defendant
“had available an informal alternative which appears to be substantially equivalent
to a transcript” and held that the trial court did not err in denying the defendant a free
copy of the transcript. Id. at 230, 92 S. Ct. at 435. 
          In contrast, the Court of Criminal Appeals, in White v. State, held that a trial
court’s denial of a continuance to allow the defense to obtain a transcript of a prior
proceeding was reversible error. 823 S.W.2d 296, 300 (Tex. Crim. App. 1992). The
court reasoned that, absent a showing by the State that the defense does not need the
transcript from the earlier proceeding, harm to the defendant is presumed. Id. at
299–300. The White court recognized that a critical distinction existed between the
facts with which it was presented and those in Britt. Id. at 299. In White, the
defendant did not have access to the court reporter “well in advance of the second
trial” as did the defendant in Britt. Id. (quoting Britt, 404 U.S. at 229, 92 S. Ct. at
435) (emphasis in White). Rather, in the event that a conflict in testimony arose at the
second proceeding, the trial court in White had expected defense counsel “to resort
to the more cumbersome method of stopping his cross-examination and pausing while
the court reporter finds the relevant notes and reads back the inconsistent testimony
to the jury.” Id. Unlike in Britt, the defense in White did not have access to the exact
testimony of the State’s witnesses until trial, and then only if the defense
independently recalled the testimony from the first trial and asked the court reporter
to read back the earlier testimony the defense believed to be conflicting. See id. The
White court concluded that such court reporter “readbacks” are not a sufficient
alternative to a transcription of the actual proceedings. Id. at 300.
          Factually, the instant case is more in line with Britt than White. Here, as the
State points out and appellant does not deny, the defense had an audiotape of the ALR
hearing containing Officer Salazar’s testimony before trial. Unlike in White, the
defense in this case was not expected to rely on court reporter “readbacks” during
trial to determine what Officer Salazar’s earlier, specific testimony had been at the
ALR hearing. Rather, as in Britt, appellant had in her possession the officer’s exact,
earlier testimony from which she could have conducted an effective impeachment
during trial. In sum, the audiotape of the ALR hearing was “an informal alternative
which appears to be substantially equivalent to a transcript.” Britt, 404 U.S. at 230,
92 S. Ct. at 435. 
          Despite appellant’s contention that the denial of her second motion for
continuance resulted in a violation of her constitutional right of confrontation, she
does not establish that the court’s refusal to delay trial until she obtained a transcript
of the ALR hearing actually prejudiced her.


 See Wright, 28 S.W.3d at 532–33
(upholding denial of continuance when appellant did not show denial resulted in
actual prejudice). We hold that the trial court did not abuse its discretion in denying
appellant’s second motion for continuance.
          We overrule appellant’s first issue.
 
Improper Jury Argument
          In her second issue, appellant contends that “the trial court abused its discretion
by refusing to grant appellant’s motion for mistrial where the prosecutor repeatedly
struck at appellant over the shoulders of her defense counsel in closing argument and
made other improper arguments.”
          Before a defendant will be permitted to complain on appeal about an erroneous
jury argument or that an instruction to disregard could not have cured an erroneous
jury argument, he will have to show he objected and pursued his objection to an
adverse ruling. See Mathis v. State, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002);
Valencia v. State, 946 S.W.2d 81, 82–83 (Tex. Crim. App. 1997); Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996); see also Tex. R. App. P. 33.1(a)(1). The
proper method to object to jury argument is to (1) object, (2) request an instruction
to disregard, and (3) move for a mistrial. Mathis, 67 S.W.3d at 926–27. Here,
appellant cites five instances of alleged improper jury argument by the prosecutor
during closing. However, in four of these instances, the trial court sustained
appellants’s objection and appellant neither requested the trial court to instruct the
jury to disregard, nor moved for mistrial. Thus, appellant’s failure to obtain an
adverse ruling to four of the five complained-of jury arguments forfeits her right to
complain about them on appeal. Cockrell, 933 S.W.2d at 89. 
          The following is the relevant exchange with regard to the remaining,
complained-of argument:
[The State]: [Officer Salazar] pulls [the defendant] over and pulls her
out of the car. She doesn’t even know what’s going on. Does she thank 
the officer and say that she didn’t realize she was going the wrong way
down the—
 
[The Defense]: Objection. That comments on the defendant’s failure to
testify. 
 
The Court: Sustained.
 
[The Defense]: The defense moves for mistrial.
 
The Court: That will be denied.

          Generally, the appropriate remedy for improper argument is an instruction to
disregard. Thompson v. State, 89 S.W.3d 843, 851 (Tex. App.—Houston [1st Dist.]
2002, pet. denied). Requesting a mistrial is insufficient to preserve error in most
circumstances because the appropriate remedy for a curable, erroneous argument, to
which an objection has been sustained, is an instruction to disregard. Id. If the
prejudice arising from the improper argument is incurable, a mistrial is appropriate
and a request for a mistrial will preserve error on appeal. Id.; see Cockrell, 933
S.W.2d at 89. Thus, if the prejudice created by the improper argument was curable
by an instruction to disregard, error was not preserved. Thompson, 89 S.W.3d at 851. 
For this reason, we must determine whether the prejudicial effect of the argument was
incurable in this case. See id.
          Except in extreme situations, an instruction to disregard is a sufficient curative
measure, and no mistrial is necessary. See Hawkins v. State, 135 S.W.3d 72, 77 (Tex.
Crim. App. 2004). Here, appellant offers no substantive argument or analysis
regarding why an instruction to cure would not have remedied any prejudice resulting
from the prosecutor’s argument. In any event, we agree with the State that, when
placed in context, the prosecutor’s argument was not an improper comment on
appellant’s failure to testify.


 Rather, the argument flowed from the evidence
presented at trial that appellant told Officer Salazar that she had no idea why he had
stopped her.


 A reasonable inference can be made from the evidence that appellant
was unaware that she had driven the wrong way down a one-way street for three or
four blocks, weaving in and out of traffic. When the prosecutor asked the jury the
rhetorical question of whether appellant thanked Officer Salazar and told him that she
did not realize she had been driving the wrong way, the prosecutor was emphasizing
to the jury that appellant did not respond as a sober person might and that appellant
lacked the ability to appreciate the dangerousness of the situation due to her
intoxication. 
          Nevertheless, even if we assume that the statement was an improper reference
to appellant’s failure to testify, we conclude that the error could have been cured with
an instruction by the trial court. The Court of Criminal Appeals has recognized that
a curative instruction in response to the State’s improper comment on the defendant’s
failure to testify will remedy such error except in the most blatant of cases. Moore
v. State, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999). Given the nature and context
of the prosecutor’s comments as discussed above, the complained-of argument was
not so blatant that an instruction to disregard would have been ineffective. See id. at
406. 
          We overrule appellant’s second issue.
Sufficiency of the Evidence
          In her third issue, appellant contends that the evidence was legally and
factually insufficient to support her conviction. 
A.      Standards of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact finder. See King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). 
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 483 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at
481–82. Our evaluation may not intrude upon the fact-finder’s role as the sole judge
of the weight and credibility accorded any witness’s testimony. See Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The fact-finder alone determines what
weight to place on contradictory testimonial evidence, as it depends on the fact-finder’s evaluation of credibility and demeanor. Id. at 408–09. 
B.      Legal Sufficiency
          In her appellate brief, appellant contends as follows: 
The only evidence that the jury had that appellant was intoxicated was
her driving the wrong way on a one way street, admission of having
three drinks, bloodshot eyes, and slurred speech. There is no way a
rational jury could have determined beyond a reasonable doubt that
appellant had lost the normal use of her mental or physical faculties by
reason of the introduction of alcohol.
We disagree with appellant’s contention. Appellant oversimplifies the evidence
heard by the jury. Officer Salazar told the jury that he believed that appellant was
intoxicated on the night in question. Officer Salazar explained that he saw appellant
drive the wrong way down a one way street for three or four blocks, weaving in and
out of traffic. Appellant told Officer Salazar that she did not know why he had
stopped her. In addition to the officer’s observations that appellant had bloodshot
eyes, an odor of alcohol on her breath, and slurred speech, Officer Salazar also
testified that he observed that appellant’s walk was unstable and that she swayed from
side to side when he asked her to perform the Rhomberg test. The jury heard that the
stop occurred at 12:45 a.m., while appellant was on her way home from a party at
which she admitted to having drunk three to four vodka mixed drinks. 
          The jury also heard from Officer Carmen, who observed that appellant had red,
glassy eyes, an odor of alcohol, and slurred speech. The jury learned that appellant
did not provide a sufficient breath sample to allow authorities to determine her blood
alcohol concentration. In addition, another officer, Officer A. Cuellar, testified that
he heard appellant talking at the police station and that her speech was slurred.
          Viewing the evidence in the light most favorable to the verdict, a rational trier
of fact could have determined that the State had proven all of the essential elements
of the charge of DWI. We hold that there was legally sufficient evidence for the fact
finder to determine beyond a reasonable doubt that appellant was guilty of DWI.
C.      Factual Sufficiency
          In conducting a factual-sufficiency review, we must discuss the evidence that,
according to appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). Appellant first contends that the evidence
does not support her conviction because, “[o]bviously, to prove that the appellant had
lost the normal use of her physical faculties the State would need field sobriety tests.” 
We disagree. 
          Evidence of a defendant’s performance of field sobriety tests is not required to
support a DWI conviction as long as other sufficient evidence exists in the record to
support the conviction. Rather, it is well-accepted that an officer’s testimony alone
may be sufficient to support a conviction for driving while intoxicated. See
Whisenant v. State, 557 S.W.2d 102, 105 (Tex. Crim. App. 1977); Scott v. State, 914
S.W.2d 628, 629–30 (Tex. App.—Texarkana 1995, no pet.). As the trier of fact, the
jury was free to determine what weight to give Officers Salazar’s testimony, which
was corroborated by that of Officers Carmen and Cuellar, and, in reaching its verdict,
whether to believe the officers. We will not disturb that determination.
          Appellant next contends that the evidence is insufficient because “[i]t is
common to see people driving the wrong way down one way streets in Houston. . . .” 
Appellant also contends that the evidence that appellant had drunk three vodka drinks
does not necessarily indicate that she was intoxicated. 
          In conducting a factual sufficiency review, however, we do not view each piece
of evidence in isolation. Instead, we view all of the evidence, both for and against the
finding of guilt, in a neutral light. Applying this standard, we observe that, not only
did the State present evidence that appellant had gone the wrong way down a one way
street, but that she had done so for three or four blocks, weaving in and out of the
oncoming traffic. She then told Officer Salazar that she did not know why he had
stopped her. In addition, not only did the State present evidence that appellant had
admitted to drinking three or four vodka drinks, but the State also presented evidence
that appellant’s eyes were bloodshot, her speech was slurred, she smelled of alcohol,
her gait was unstable, and that she poorly performed the Rhomberg test. Moreover,
to the extent that the evidence could be viewed as conflicting, any such conflicts were
for the jury to resolve. 
          Considering the evidence neutrally, we hold that the jury’s verdict in this case
is not irrational, or clearly wrong and manifestly unjust, or that the contrary evidence
is so strong that the standard of proof beyond a reasonable doubt could not have been
met. See Escamilla, 143 S.W.3d at 817.
          We overrule appellant’s third issue.
Conclusion
We affirm the judgment of the trial court.




                                                                                  Laura Carter Higley
                                                                                  Justice

Panel consists of Justices Taft, Alcala, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).